*In re* BETTY V. RIVIERE, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Betty V. Riviere, Respondent-Appellant).

Third District No. 3—88—0550

Opinion filed May 24, 1989.

Guardianship & Advocacy Commission, of Peoria, and Jeff Plesko, of Legal Advocacy Service, of Carbondale (Cynthia Z. Tracy, of counsel), for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Respondent Betty Riviere appeals from an order of the circuit court of Peoria County directing her involuntary admission and hospitalization in the Department of Mental Health and Developmental Disabilities.

On August 3, 1988, respondent caused a disturbance in the Peoria County courthouse when she attempted to see the chief judge about her need for an attorney. She was arrested and taken to the county jail, where emergency medical personnel were called, and it was determined that she appeared to be mentally ill. She was admitted on an emergency basis at the Zeller Mental Health Center, and a petition for involuntary admission was prepared and dated August 3. Certificates of two staff physicians at Zeller accompanied the petition, both indicating that respondent was examined on August 3 and that she

was mentally ill and because of her illness was reasonably expected to inflict serious physical harm upon herself or another in the near future.

The petition and the two certificates were not filed in the circuit court until August 5, and on that same date the matter was set for hearing on August 10. Service of petition is not shown in the record, but the record indicates that a notice of hearing was served upon the respondent at Zeller on August 8.

Respondent appeared at the hearing on August 10. She requested an attorney, and the assistant public defender was appointed and given time to confer with her.

Dr. Athena Guzman, the treating physician, was called to testify to respondent's condition. She diagnosed respondent as bipolar disorder, manic, with some psychotic features. Dr. Guzman testified that, on the basis of respondent's behavior at the time of her arrest and admission, she believed respondent would resort to the same kind of conduct if released and that she was likely to inflict serious physical harm upon others.

During the hearing respondent frequently interrupted the proceedings, prompting numerous warnings. She took the witness stand and was permitted to describe her efforts to secure patents on certain toys, her inability to support herself, her encounters with various governmental agencies, and other irrelevant matters. She repeatedly asserted that she was not mentally ill and would not take any medicine given to her at Zeller. At the conclusion of the hearing, the court ordered respondent hospitalized for up to 60 days. She then began shouting and swearing and walked out of the courtroom.

Before oral arguments, the State filed a motion to take judicial notice and to dismiss the appeal, requesting that this court take judicial notice of certain documents filed in another cause pending in this court involving respondent. Cause No. 3—88—0732 involved an appeal by Betty Riviere from a subsequent involuntary commitment. The attorney representing respondent had filed a motion to withdraw and to dismiss that appeal on the ground that no reversible error occurred in that proceeding. The State contends that the instant appeal is moot since respondent is now hospitalized under a subsequent order of commitment which she admits is valid.

Prior to oral argument, we denied the State's motion. During the course of oral argument, counsel for respondent admitted in open court that respondent was subsequently hospitalized pursuant to a valid commitment order. We believe that the State's motion was improvidently denied and should have been taken with the case. We

therefore vacate our order of denial and consider here the merits of that motion.

The State relies upon *In re Wathan* (1982), 104 Ill. App. 3d 64, 432 N.E.2d 670, where, pending appeal from an involuntary commitment, the respondent applied for a voluntary admission to the mental health center to which he had previously been involuntarily committed. The reviewing court held that the appeal from the involuntary commitment order was moot since respondent's voluntary admission merely confirmed the trial court's finding that he was in need of treatment for mental illness.

■ In the instant cause, the second commitment is involuntary, not voluntary as in *In re Wathan*, so we do not have an admission by respondent that she is in need of treatment for mental illness. At most, we have appellate counsel admitting that the State was able to prove that respondent was in need of treatment at a later date. Furthermore, since this is the first of two consecutive commitments, the possibility of collateral legal consequences would bar the application of the mootness doctrine. (*In re Meek* (1985), 131 Ill. App. 3d 742, 476 N.E.2d 65.) We, therefore, deny the motion to dismiss this appeal on the ground of mootness.

■ As to the other part of the State's motion, we grant the motion to take judicial notice of the subsequent commitment order and the dismissal of the appeal from that order. This court has previously commented upon the problems associated with "overlapping" commitment proceedings. (*In re Williams* (1986), 140 Ill. App. 3d 708, 489 N.E.2d 347.) To ignore the subsequent proceedings in such cases would be to try to resolve important questions involving personal liberty issues in a sort of factual vacuum. We prefer to know where we are insofar as possible.

■ Respondent first contends that error occurred when the petition for involuntary commitment was filed 48 hours after her admission to Zeller rather than the statutorily mandated 24 hours and when the record failed to indicate that she was served with a copy of the petition within 12 hours of admission as required by the Mental Health and Developmental Disabilities Code (Mental Health Code) (Ill. Rev. Stat. 1987, ch. 91½, pars. 3—609, 3—611). She is correct. The petition recites that she was admitted on August 3, but it was not filed until August 5. Failure to file the petition in a timely manner is reversible error. (*In re Elkow* (1988), 167 Ill. App. 3d 187, 521 N.E.2d 290.) Similarly, the absence of proof of service of the petition within 12 hours of admission is error. *In re Elkow* (1988), 167 Ill. App. 3d 187, 521 N.E.2d 290.

 █ The State responds that respondent waived these errors by not raising them in the trial court. She appeared at the hearing, was represented by counsel, and participated in the proceedings without objecting to the jurisdiction of the trial court. In most cases, the courts would consider any error as to filing and service procedures to be waived by such activity. (*E.g.*, *In re J.W.* (1981), 87 Ill. 2d 56, 429 N.E.2d 501.) However, in cases involving involuntary commitment, Illinois courts have recognized "a doctrine analogous to the plain error doctrine," and have considered on appeal issues that are readily apparent in the record though not brought to the attention of the trial court. (*E.g.*, *In re Stone* (1989), 178 Ill. App. 3d 1084; *In re Plank* (1988), 169 Ill. App. 3d 411, 523 N.E.2d 614.) Following our decision in *In re Stone*, we hold that the procedural errors here concerning the late filing and failure to record service of the petition may be considered upon appeal. The commitment order must be reversed.

Having reversed the order on those grounds, we need not consider the other issues raised by respondent.

As indicated above, respondent was subsequently committed involuntarily to Zeller for treatment pursuant to a separate petition alleging different grounds. Consequently, to remand this cause for additional proceedings would be meaningless. See *In re Williams* (1986), 140 Ill. App. 3d 708, 498 N.E.2d 347.

 We want to make clear, however, that we do not condone disregard for the statutory requirements which protect the rights of persons subjected to the involuntary admission process. Illinois courts have said that compliance with the procedural safeguards of the Mental Health Code is essential since liberty interests are involved. (*E.g.*, *In re Satterlee* (1986), 148 Ill. App. 3d 84, 499 N.E.2d 101.) Nonetheless, until such time as the legislature sees fit to provide a meaningful remedy in cases such as this one, a reviewing court can only reverse.

Reversed.

WOMBACHER, P.J., and STOUDER, J., concur.